EUGENE M. ALEXANDER, LILLIAN G. ALEXANDER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 52565.    Filed July 20, 1956.

*Arnold Lefkovits, Esq.*, for the petitioners.
*Lester R. Uretz, Esq.*, for the respondent.

OPINION.

BLACK, *Judge:* The pleadings and evidence raise the following issues in this proceeding:

1. Did petitioner make a completed sale to Henry in 1950, for a consideration of $1,000 paid and agreed to be paid, of the 10 notes for $1,000 each which he held against Percy Badham? If this question is answered in the affirmative, then is petitioner entitled to a long-term capital loss of $9,500 in 1950, of which he claims a deduction of $1,000 in 1950 and a deduction of $1,000 in each of the years 1951 and 1952 as a capital loss carryover from 1950?

2. Was the $500 which was paid petitioner by Henry in 1950 paid to him for his appearance as a witness in the suit which petitioner, sometime in 1950, brought against Percy and was it income to petitioner as determined by the Commissioner?

3. If issue 1 is decided against petitioner, then, in the alternative, is petitioner entitled to a nonbusiness bad debt loss of $9,500 in 1952?

## *Issue 1.*

We shall take up and decide issue 1 first. If it is decided in petitioner's favor, then he does not press issue 3.

There is no dispute but that in 1950 petitioner was the owner and holder of 10 promissory notes of $1,000 each executed February 24, 1931, by Percy and due, respectively, from 1 to 10 years after date. Nothing had ever been paid petitioner on these notes except a small amount of interest. In 1933, Percy was adjudged a bankrupt and was discharged as a bankrupt December 14, 1934.

Petitioner was advised by his attorney that because his indebtedness against Percy was occasioned by Percy's fraud, Percy would not be discharged in bankruptcy from the indebtedness which he owed peti-

tioner. Petitioner, therefore, did not prove up his claim against Percy on the 10 notes for $1,000 each which he owed petitioner. Petitioner still owned these notes in 1950. In that year Henry Badham, a brother of Percy and the executor of their father's estate, was bringing a suit in his fiduciary capacity against Percy. He was, for reasons which do not appear too clear in the record, anxious for petitioner to bring suit against Percy in the United States District Court at Louisville, Kentucky, on the 10 notes which he owned. He had his lawyer agree to pay petitioner $500 immediately on the notes and $500 additional at the conclusion of the suit. Henry paid the $500 in 1950 which, under the agreement, he was to pay immediately but he never paid the remaining $500 which was to be paid at the conclusion of the suit. Petitioner claims that under the arrangements which were made with Henry concerning the notes, he sold the notes to Henry in 1950. In fact, he testified at the hearing that he sold the notes to Henry in 1950. Regardless of what petitioner may have thought he did, the facts in the record do not convince us that petitioner sold the notes to Henry. The record shows that the suit against Percy was brought by petitioner and the judgment which was obtained against Percy was in petitioner's favor. Petitioner's pleadings in the case are not in evidence but they must have alleged that petitioner was the legal owner and holder of the notes or else the judgment would not have been rendered in his favor. Therefore, we think the facts fail to sustain petitioner's contention that he sold the 10 notes to Henry in 1950 and suffered a long-term capital loss of $9,500 by reason of such sale, of which he was entitled to take a capital loss deduction of $1,000 in 1950 and a carryover capital loss of $1,000 in each of the taxable years 1951 and 1952.

The Commissioner's action in disallowing the $1,000 capital loss claimed by petitioner in each of the taxable years, including the carryover losses into 1951 and 1952, is sustained.

### Issue 2.

We next take up petitioner's assignment of error that the Commissioner erred in his determination that "This office further proposes to include the $500.00 received from Henry Badham for appearance as a witness on your 1950 return, in accordance with Section 22 of Internal Revenue Regulations." The evidence shows that all that petitioner received for his appearance as a witness was his actual expenses as a witness in traveling to and from Louisville, Kentucky, in attending the trial of the suit brought in his name against Percy. Just how much these expenses were is not shown in the record. It is clear from the evidence, however, that these expenses had nothing to do

with the $500 which Henry paid petitioner in 1950. None of that $500 was paid petitioner for his attendance as a witness. Petitioner treated it as a return of capital on his $10,000 notes and, while for reasons we have already explained we cannot hold under the evidence that petitioner made a completed sale of the notes to Henry in 1950 so as to entitle him to a capital loss in that year, nevertheless, we do hold that this $500 was a return of capital to petitioner and was not income to petitioner in 1950, as the Commissioner has determined.

The action of the Commissioner in adding this $500 to petitioner's income in 1950 is not sustained.

## *Issue 3.*

We next take up petitioner's alternative assignment of error which is that petitioner incurred a bad debt loss of $9,500 in the year 1952. Petitioner concedes that his debt against Percy was a nonbusiness debt. The testimony of petitioner was to the effect that while he realized that after Percy's bankruptcy in 1933 and his discharge in bankruptcy in 1934 his notes had but little value, nevertheless, he was advised by his attorney that on account of Percy's indebtedness to petitioner being based on Percy's fraudulent representations to him, Percy's discharge in bankruptcy did not free him from liability on the notes. That this was true is attested by the fact that in 1951 petitioner secured judgment against Percy on the 6 notes which had not been previously barred by the statute of limitations.

Did petitioner's indebtedness against Percy become worthless in 1952? Petitioner has the burden of showing that his debt against Percy became worthless in 1952. Cf. *Redman* v. *Commissioner*, 155 F. 2d 319. Respondent contends that the indebtedness became worthless in 1933 when Percy filed his petition in bankruptcy. Ordinarily bankruptcy of the debtor is an identifiable event to prove the debt of the creditor worthless if nothing is collectible. But here the situation is somewhat different from the ordinary bankruptcy proceeding. Here the debt against the bankrupt was tainted with fraud against the creditor and the bankrupt was not discharged from the indebtedness.

It is undoubtedly true that, following Percy's bankruptcy, the notes had but small value but petitioner testified that at all times he regarded them as having some value and that he expected at some time in the future to collect them, at least in part. He made no attempt to take any tax deduction, because of the worthlessness of the notes, in any year prior to the taxable years here involved. By the time petitioner brought suit on the notes in 1950, Percy had become the general manager of a large department store in Louisville, Kentucky, at a salary of

$20,000 per annum. Petitioner had good grounds to believe he could collect his judgment if one was procured. After petitioner secured the judgment against Percy, either Percy was discharged from the position which he held or he voluntarily resigned from it and moved to Houston, Texas. Petitioner endeavored to collect on his judgment by legal process, but failed. On the evidence, we have made a finding that "Further efforts to collect the judgmeint proved futile and it became worthless in 1952." But it must be remembered that the judgment of $13,266 in petitioner's favor consisted of $6,000 as principal and the balance was interest. Petitioner does not contend that any of this interest had ever been taken into income and was a part of his loss. Therefore, it is clear that it was not deductible as a part of the debt.

Petitioner agrees that the $500 which he received in 1950 from Henry was a return of capital and should be used to reduce the principal of his notes. Petitioner, in his alternative assignment of error, alleges that he incurred a bad debt loss of $9,500 in 1952. In his allegation of facts in support of his alternative assignment of error, petitioner alleges:

2. Petitioners have not been compensated by insurance or otherwise for or on account of said bad debt loss in the amount of $10,000.00 except that petitioners admit Eugene Alexander was paid the sum of $500.00 by the brother of said Percy Badham in the year 1950. * * *

Notwithstanding petitioner's claim that he suffered a nonbusiness bad debt loss of $9,500 in 1952, it seems clear that he did not suffer a loss of $4,000 of this amount in 1952. This $4,000 is represented by 4 notes of $1,000 each against which the statute of limitations had run when petitioner brought his suit against Percy in 1950. Petitioner took a nonsuit on these 4 notes after his suit was instituted. Petitioner was given judgment on only the 6 remaining notes for $1,000 each. Therefore, we hold that petitioner has not proved that the 4 notes for $1,000 each, which were barred by the statute of limitations when petitioner brought his suit against Percy in 1950 and on which later in that year he took a nonsuit, had any value at the beginning of the taxable year 1952. These notes had become worthless in some prior year. What year it is unnecessary for us to decide.

Therefore, we hold that the amount of petitioner's debt against Percy which became worthless in 1952 was $5,500, instead of the $9,500 which petitioner claims in his alternative assignment of error. As already stated, petitioner concedes that this debt was a nonbusiness debt. Therefore, the statute which is applicable to the deduction claimed is section 23 (k) (4), Internal Revenue Code of 1939.

*Decision will be entered under Rule 50.*